# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 24-40900-EDK |
| JOHN A. CLOUTIER, | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |
|  | ) |  |
| HALEY MARIE CLOUTIER, | ) | Adversary Proceeding |
|  | ) | No. 24-4041 |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| JOHN A. CLOUTIER, | ) |  |
|  | ) |  |
| Defendant | ) |  |
|  | ) |  |

## <u>MEMORANDUM OF DECISION</u>

Before the Court, after trial, is an adversary complaint (the "Complaint") filed by Haley Marie Cloutier ("Haley") against John A. Cloutier, Haley's paternal grandfather and the debtor in the underlying Chapter 7 bankruptcy case (the "Debtor").  Through this adversary proceeding, Haley seeks a ruling that a debt owed to Haley by the Debtor is excepted from the Debtor's discharge under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(5).[1]  At the heart of this case is an intra-family dispute between Haley and the Debtor arising from the disposition of settlement proceeds received on account of the untimely death of Joshua D. Cloutier ("Joshua"), Haley's father and the Debtor's son.

---

[1] All statutory references in this Memorandum are to provisions of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), unless otherwise stated.

1

I.      FACTS AND TRAVEL OF THE CASE[2]

In 2003, when Haley was three years old, Joshua died in an automobile accident.  Joshua

did not have a will and Haley, as Joshua's only child, was Joshua's sole heir.  The Debtor opened

Joshua's estate (the "Estate") in the Worcester Probate and Family Court on July 16, 2003 and was

appointed administrator of the Estate on August 15, 2003.  The Debtor, as administrator of the

Estate, settled a wrongful death claim relating to the automobile accident for a total of $50,000

(the "Settlement").

As the Estate administrator, the Debtor submitted to the probate court a first and final

accounting for the period of April 17, 2003 to April 17, 2004 (the "Accounting").[3]  The Accounting

lists the following expenses disbursed from the Settlement proceeds: $6,209.23 to the

Commonwealth of Massachusetts for a Medicaid lien reimbursement; $4,910.53 for funeral

expenses;[4] $2,000 for administrator's fees and expenses; $7,593.73 to Ward, Walsh & Rice, P.C.

for legal services related to probate; and $7,000 to Harold Naughton, Esq. for legal services related

to the Settlement.  Finally, the Accounting indicates that the remaining proceeds in the amount of

$22,286.51 were placed in the Haley Marie Cloutier Trust (the "Trust").

However, the Trust was never created.  Instead, according to the Debtor's testimony, the

funds were deposited into a bank account at Commerce Bank (the "Account") that was set up either

---

[2] The factual findings contained in this Memorandum are based on the trial testimony, the admitted evidence, the parties' stipulation of facts, and the Court's own records. *See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999).

[3] The Accounting was not dated.  However, the copy provided to this Court indicates that it was filed in June 2005 and judgment entered on January 24, 2006.

[4] The Debtor submitted in evidence a receipt from a funeral home in the amount of $6,860 for Joshua's funeral dated April 17, 2003.  However, the Court credits the $4,910.53 figure in the Accounting as the most reliable amount of funeral expenses because the Accounting was filed in June 2005 after any funeral expenses would have been finalized and paid and, when given the opportunity, the Debtor was unable to explain the discrepancy.

in the Debtor's name or in the Estate's name, but referenced Haley. The Debtor testified that, at some point, he removed the funds from the Account and used a portion of the funds to purchase clothes for Haley and a vehicle for Haley's mother, Carina Papaleo ("Papaleo"). The Debtor testified that he believed Papaleo knew the vehicle was purchased with the Settlement funds, but his testimony in this regard was inconsistent. Papaleo testified that, in a phone conversation with the Debtor and his wife, Papaleo was told the vehicle had been purchased for the Debtor's wife, who no longer wanted it. Papaleo also testified that she was never informed as to the existence of the Settlement,[5] or that the vehicle was purchased with the funds that were supposed to be held in trust for Haley.

If the Debtor is to be believed that he did in fact open a bank account, the Debtor never returned any remaining funds back to the Account; rather, he stored the funds in a safe at his home. The Debtor offered no reason for this decision at trial, stating that he did not recall why he stored the funds in the safe or why he did not return the remaining funds back into the Account. The Debtor also testified that he used a portion of the funds set aside for Haley to purchase a monument in honor of Joshua as well as burial plots for himself and his wife.

In 2022, Haley discovered the existence of the Settlement and (operating under the belief that a trust had been created), requested through counsel all information related to the Trust, including information as to the Account, statements of disbursements, and the present balance of the Trust. Haley also revoked the Debtor's authority to act as trustee at that time. At that point, the Debtor informed counsel that the Trust was never created. And, on September 21, 2022, the Debtor remitted $13,000 to Haley via two certified checks, claiming that amount to be the

---

[5] Papaleo's signature appears on the Accounting (to which references to the Settlement were attached), but Papaleo testified at trial that she had been presented with a blank form to sign and was unaware of the substance of the Accounting.

3

remaining funds from the Settlement proceeds.

On June 27, 2024, Haley filed a lawsuit against the Debtor in Worcester Superior Court.[6] Haley's claims were not fully litigated against the Debtor in state court, as the Debtor filed his voluntary Chapter 7 petition on September 9, 2024, staying the state court proceedings.[7]

Haley commenced this adversary proceeding by filing the Complaint on December 2, 2024, asserting that the debt is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(5). The Court held a trial on the Complaint, took the matter under advisement, and granted the parties the opportunity to submit post-trial briefs, which both have done.

II.     POSITIONS OF THE PARTIES

Haley contends that the debt should be excepted from the Debtor's discharge for several reasons.[8] In Count I of the Complaint, Haley asserts that the debt should be excepted from discharge under § 523(a)(4) — which excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" — because the Debtor's conduct related to the Trust and the Settlement funds amounts to fraud and defalcation by a fiduciary, embezzlement, and larceny. In Count II, Haley claims that the debt should be excepted from

---

[6] The Court is not privy to what claims were brought against the Debtor in state court. The Complaint does not mention the state court claims, and no related documents were submitted as evidence.

[7] In the schedules filed with the petition, the Debtor listed a debt to Haley as an unliquidated, disputed, nonpriority unsecured debt in the amount of $70,000. Haley filed a proof of claim in the amount of $56,981. No objection to Haley's proof of claim has been filed. Haley does not rely on the filed proof of claim as establishing the amount of debt owed, and this Court likely would not be persuaded that the proof of claim would have a preclusive effect on the amount of any debt owed to Haley given that no assets are available for distribution in the Debtor's case. *See Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852 F.3d 405, 415 (5th Cir. 2017) (unobjected-to proof of claim in no asset Chapter 7 case was not entitled to preclusive effect in later proceedings).

[8] As will be discussed more fully below, Haley's arguments start with the assumption that the Debtor owes Haley a debt, even though the existence and the amount of that debt has not yet been established.

discharge under § 523(a)(2)(A) — which excepts from discharge debts obtained by "false pretenses, a false representation, or actual fraud . . ." — based on the Debtor's representations made under penalties of perjury as to the Trust in the Accounting and the Debtor's failure to create the Trust. Finally, in Count III, the Debtor contends that the debt should be excepted from discharge under § 523(a)(5) — which excepts from discharge debts "for a domestic support obligation" — because the Settlement funds were intended to be for the support of Haley as a minor child.

Haley maintains that the total debt owed is $56,981.08, based on the expected growth of the Settlement funds had they been appropriately invested, less the $13,000 already paid by the Debtor to Haley. In support of this calculation, Haley relies on a letter solicited from an accountant that opined on earnings that may have accrued had the funds been invested. Haley argues entitlement to the lost earnings as representing the amount by which the original principal would have grown had the Debtor invested the funds as he was required to do under state law, either as administrator of the Estate or as trustee of the Trust (had he created the Trust).

In opposition, the Debtor generally maintains that any debt owed to Haley should not be excepted from discharge but fails to specifically address Haley's arguments under §§ 523(a)(2) or 523(a)(5). With regard to § 523(a)(4), the thrust of the Debtor's argument is that his conduct with respect to the funds was at most negligent and that his failure to invest the funds does not meet the standard required for a finding of defalcation while acting in a fiduciary capacity under § 523(a)(4) as set forth by the Supreme Court in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013). Further, the Debtor argues that because there was no trust document, the Debtor was never directed how to hold the funds, when to disburse the funds, or whether to invest the funds.

The Debtor also contends that in addition to the $13,000 tendered to Haley in 2022, the Court should deduct from the principal amount of the Settlement funds (1) the amount of $6,000 that the Debtor says he spent on the vehicle for Haley's mother; (2) an amount equal to $300 to $400 annually over a "few years" for clothing purchased for Haley; and (3) the amount of $1,949.47, based on a discrepancy between the amount listed for funeral expenses in the Accounting and the receipt from the funeral home.

III.    DISCUSSION

Though not expressly stated through a separate count (or counts) in the Complaint, in addition to seeking a determination as to whether the debt is nondischargeable, Haley also asks this Court to liquidate Haley's claim against the Debtor. The Debtor's liability and the amount of any debt has not been determined through the state court process, as there has been no judgment in the state court litigation. Each party has presented arguments regarding both the Debtor's liability and the amount of damages, and neither party has requested that liability or any damages award be left to determination through the state court process.

Accordingly, this Court "is not only tasked with determining whether the circumstances for nondischargeability enumerated in § 523(a) are established, but must also necessarily determine the scope of the debtor's 'liability on [the] claim,' and the creditor's 'right to payment.'" *Chen v. Huang (In re Wen Jing Huang)*, 509 B.R. 742, 754 (Bankr. D. Mass. 2014) (quoting 11 U.S.C. §§ 101(12), 101(5)(A)) (citation omitted). This Court has subject matter jurisdiction to do so. *See id.* (dischargeability determinations "place the existence and scope of the debtor's liability and the creditor's right to payment squarely within the bankruptcy court's core jurisdiction" (footnote omitted)).

6

In making the determination as to whether any liability to Haley should be excepted from the Debtor's discharge, in accordance with the Bankruptcy Code's "fresh start" policy, the Court is mindful that "[e]xceptions to discharge are construed narrowly . . . and for that reason, the claimant must show that [the] 'claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a).'" *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997) (quoting *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 9 (1st Cir. 1994), *overruled on other grounds by Field v. Mans*, 516 U.S. 59, 70–71 (1995)).

### A.      11 U.S.C. § 523(a)(5): Domestic Support Obligations

Haley maintains that the debt owed by the Debtor is excepted from discharge under § 523(a)(5) as a debt "for a domestic support obligation." 11 U.S.C. § 523(a)(5). Section 101(14A) defines a "domestic support obligation," in relevant part, as

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law . . . that is –
>
> (A) owed to or recoverable by –
>
> > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> >
> > (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established . . . by reason of applicable provisions of . . .
>
> > (ii) an order of a court of record . . . .

11 U.S.C. § 101(14A). "In order to be excepted from discharge, then, the debt must meet all three prongs of the 523(a)(5) test, namely that it was (1) to a . . . child of the debtor; (2) incurred for the support of the child; and (3) in connection with an order of a court of record." *Epstein v. Defilippi*

*(In re Defilippi)*, 430 B.R. 1, 3 (Bankr. D. Me. 2010) (quoting *Spear v. Constantine (In re Constantine)*, 183 B.R. 335, 336 (Bankr. D. Mass. 1995)).

"[T]he Bankruptcy Code does not define the terms 'child' or 'child of the debtor.'" *Raridon v. Carlson (In re Carlson)*, 545 B.R. 229, 233–34 (Bankr. N.D. Ill. 2016) (footnote omitted). However, the plain language of the operative phrase "child of the debtor" indicates that "[a] parental relationship is clearly suggested . . . ." *Ceconi v. Uriarte (In re Uriarte)*, 215 B.R. 669, 673 (Bankr. D.N.J. 1997).

Neither party provided the Court with any cases discussing § 523(a)(5) in the context of a debtor and a grandchild. However, the cases found by the Court involving grandparent-debtors are all readily distinguishable. Several cases have held that, under applicable state law, prepetition guardian ad litem fees awarded against the grandparent-debtors were not domestic support obligations under § 523(a)(5) and therefore were not excepted from discharge. *See Carlson*, 545 B.R. at 239 (concluding that, under Illinois law, complaint failed to allege that granddaughter was debtors' "child" within the meaning of § 523(a)(5)); *Eliason v. Sullivan (In re Sullivan)*, 234 B.R. 244, 246 (Bankr. D. Conn. 1999) (concluding that fees owed by grandparent-debtor to guardian ad litem were dischargeable because, under Connecticut law, a "guardian of a minor child has no legal obligation of support for that child"); *Uriarte*, 215 B.R. at 674 (concluding that, because a guardian is not legally obligated to support a child under New Jersey law, guardian ad litem fees were dischargeable under § 523(a)(5)). The Court found one case in which the court held that, under Maine law, where a state court determined joint debtors to be the de facto parents of their grandchild, guardian ad litem fees were excepted from discharge under § 523(a)(5). *See Defilippi*, 430 B.R. at 4–5.

None of those cases is analogous to the facts here because there is no prepetition state court

order establishing any legal relationship between the Debtor and Haley.  The parties do not dispute that Haley is the Debtor's grandchild, not the Debtor's child.  The Debtor was never ordered the de facto parent of Haley or established as Haley's legal guardian.  The Debtor is simply Haley's paternal grandfather.  Because Haley is not a "child of the debtor" within the meaning of 11 U.S.C. § 101(14A), any debt owed to Haley would not be a domestic support obligation under the plain language of the Bankruptcy Code, and any debt cannot therefore be excepted from discharge under 11 U.S.C. § 523(a)(5).  Accordingly, judgment will enter in favor of the Debtor on Count III of the Complaint.

**B.      11 U.S.C. § 523(a)(2)(A): False Pretenses, False Representation, Actual Fraud[9]**

Haley also argues that the debt owed by the Debtor is excepted from discharge under § 523(a)(2)(A), which "excepts from discharge 'any debt for money, property, services . . . to the extent obtained by false pretenses, a false representation, or actual fraud . . . .'" *Weiss v. Fautz (In re Fautz)*, 636 B.R. 553, 565 (Bankr. D. Mass. 2022) (quoting 11 U.S.C. §523(a)(2)(A)).

To prevail under § 523(a)(2)(A) based on a false representation, a plaintiff must prove that:

> 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the false statement, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage.

*Dewitt v. Stewart (In re Stewart)*, 948 F.3d 509, 520 (1st Cir. 2020) (quoting *Shafarz v. Goguen (In re Goguen)*, 691 F.3d 62, 66 (1st Cir. 2012)).  To prevail under § 523(a)(2)(A) based on false pretenses, the elements are substantially similar to those required for a false representation.  A plaintiff must "prove that [the defendant] made a false representation with fraudulent intent (i.e.,

---

[9] While the Complaint fails to specify whether Count II is brought under § 523(a)(2)(A) or § 523(a)(2)(B), the Plaintiff's post-trial brief addresses only § 523(a)(2)(A).  Accordingly, the Court will not address the applicability of § 523(a)(2)(B).

9

with 'scienter'), that [the defendant] intended to induce the [plaintiff] to justifiably rely on [the] misrepresentation, that the [plaintiff] did in in fact rely on the representation, and that the reliance caused a pecuniary loss." *Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur)*, 737 F.3d 814, 818 (1st Cir. 2013) (citing *Palmacci*, 121 F.3d at 786). "A false pretense or misrepresentation can be created 'when the circumstances imply a particular set of facts, and one party knows the facts to be otherwise,' and where the silent party 'may have a duty to correct what would otherwise be a false impression.'" *Id.* (quoting *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999)).

While the Debtor's signing of the Accounting and certification under the penalties of perjury that the Haley Marie Cloutier Trust was established with the principal amount of $22,286.51 constituted a false representation or false pretense because the Trust was not established, Haley has not proven the rest of the necessary elements. Haley failed to (1) demonstrate how she (or her mother, as her guardian) was induced to rely on that false representation or false pretense, (2) establish the justifiability of any reliance, and (3) prove that any such reliance caused damage to Haley. *See Stewart*, 948 F.3d at 520. In fact, Haley admits that neither she, nor her mother, knew of the existence of the Settlement funds or the filing of the Accounting until 2022. Without such knowledge, neither Haley nor her mother could claim any reliance on the representations in the Accounting, which constitutes the "statement" Haley sets forth as the basis of the § 523(a)(2)(A) claim.

Finally, actual fraud under § 523(a)(2)(A) "consists of any deceit, artifice, trick, or design involving direct or active operation of the mind, used to circumvent and cheat another." *Stewart*, 948 F.3d at 521 (quoting *Sauer Inc. v. Lawson (In re Lawson)*, 791 F.3d 214, 219 (1st Cir. 2015)). Haley's only developed argument under § 523(a)(2)(A) is that the Debtor's conduct rises to a level

10

of actual fraud because the Debtor acted fraudulently when he opened the Estate and did so with the intention of obtaining the Settlement funds for himself when he signed the Accounting under penalties of perjury. Although the Debtor made a false representation in the Accounting by indicating that the net proceeds were placed in the Haley Marie Cloutier Trust, there is insufficient evidence that, at the time the Debtor obtained the Settlement funds, he intended to keep those funds for himself.

This Court finds that Haley has failed to demonstrate that any debt owed to Haley is excepted from discharge under § 523(a)(2)(A) (based on the false representation in the Accounting that the remaining funds had been placed in the Trust) because any debt incurred was not "for money, property, services, or an extension, renewal, or refinancing of credit . . . *obtained by*" a false representation, false pretenses, or actual fraud. 11 U.S.C. § 523(a)(2)(A) (emphasis added). Accordingly, judgment will enter in favor of the Debtor on Count II of the Complaint.

**C. 11 U.S.C. § 523(a)(4): Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny**

Finally, Haley contends that the debt owed by the Debtor is excepted from discharge pursuant to § 523(a)(4) as a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

1. <u>Fraud While Acting in a Fiduciary Capacity</u>

Under § 523(a)(4), fraud while acting in a fiduciary capacity and defalcation while acting in a fiduciary capacity are different concepts. *See State of Ill. Dep't of Lottery v. Marchiando (In re Marchiando)*, 138 B.R. 548, 552 n.7 (Bankr. N.D. Ill. 1992) (noting that § 523(a)(4) "provides four separate grounds for holding a debt nondischargeable: fiduciary fraud, fiduciary defalcation, embezzlement, and larceny"), *aff'd*, 142 B.R. 246 (N.D. Ill. 1992), *aff'd*, 13 F.3d 1111 (7th Cir. 1994). "'Fraud' under § 523(a)(4) means actual fraud." *Andrade v. Hill (In re Hill)*, 610 B.R. 154,

11

161 (Bankr. D. Me. 2019) (quoting *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 382–83 (B.A.P. 9th Cir. 2011)), *appeal dismissed*, Case No 2:19-cv-00549-LEW, 2020 WL 1640078 (D. Me. Apr. 2, 2020). "The definition of 'fraud' for purposes of 523(a)(4) is the same as fraud with respect to 523(a)(2)." *T Street LLC v. Jaques (In re Jaques)*, 615 B.R. 608, 635 (Bankr. D. Idaho 2020) (quoting *In re Chavez*, 140 B.R. 413, 423 (Bankr. W.D. Tex. 1992)).

As discussed above, the Court has already ruled that the Debtor did not incur the debt to Haley through false pretenses, a false representation, or actual fraud, for purposes of § 523(a)(2)(A). Accordingly, the Court rules that Haley has failed to establish that the Debtor committed fraud while acting in a fiduciary capacity under § 523(a)(4).

2.    Larceny

"There is no First Circuit guidance on what constitutes larceny under § 523(a)(4), but courts describe it as the fraudulent and wrongful taking of the property of someone else with the intent to appropriate to the taker's use and deprive the owner of such property." *Ansin v. Ansin (In re Ansin)*, 667 B.R. 760, 769 (Bankr. D.N.H. 2025) (citations omitted). "It is distinguished from embezzlement in that larceny requires that the initial acquisition of the property be unlawful." *Id.* (citations omitted). "Moreover, larceny for purposes of § 523(a)(4), is defined by reference to federal common law, which requires establishment of the debtor's actual fraudulent intent in obtaining the property at issue." *Nasif v. Palladino (In re Palladino)*, 560 B.R. 608, 628 (Bankr. D. Mass. 2016) (citing *Reilly v. Miano (In re Miano)*, 265 B.R. 352, 356 (Bankr. D. Conn. 2001)).

Here, the record reflects that the initial acquisition of the funds was lawful, as evidenced by the Accounting. Because the Debtor lawfully acquired the funds, Haley has failed to prove that the Debtor committed larceny or that the debt should be excepted from discharge for larceny under § 523(a)(4).

12

3.      Embezzlement

"Embezzlement in § 523(a)(4) 'is the fraudulent conversion of the property of another by one who is already in lawful possession of it.'" *Akerman v. Ackerman (In re Ackerman)*, 587 B.R. 750, 795 (Bankr. D. Mass. 2018) (quoting *Sherman v. Popatov (In re Sherman)*, 603 F.3d 11, 13 (1st Cir. 2010)). "[T]o amount to embezzlement, conversion must be committed by a perpetrator with fraudulent intent." *Sherman*, 603 F.3d at 13. "It is knowledge that use is devoid of authorization, scienter for short . . . that makes the conversion fraudulent and thus embezzlement." *Id.* (citation omitted). "Fraudulent intent means simply the debtor's knowledge that he has no right to use the property." *Groom v. Krook (In re Krook)*, 615 B.R. 479, 485 (Bankr. N.D. Ill. 2020) (citation omitted). "'[U]sing entrusted money for the recipient's own purposes in a way he knows the entrustor did not intend or authorize' is embezzlement." *Ansin*, 667 B.R. at 768 (alteration in original); *see also Kontos v. Manevska (In re Manevska)*, 587 B.R. 517, 534 (Bankr. N.D. Ill. 2018) ("Using access that has been granted to funds to misappropriate those funds constitutes embezzlement." (citation omitted)).

> In summary, embezzlement requires proof that "(i) property in the perpetrator's lawful possession but (ii) belonging to another (iii) was appropriated by the perpetrator in a manner inconsistent with the property rights of the other and the scope of his or her authorization to deal with the property (iv) with fraudulent intent."

*Ackerman*, 587 B.R. at 795 (quoting *Reiss v. McQuillin (In re McQuillin)*, 509 B.R. 773, 785 (Bankr. D. Mass. 2014)). "Embezzlement does not require proof that the perpetrator held the property as a fiduciary." *Id.* (citing *Farley v. Romano (In re Romano)*, 353 B.R. 738, 765 (Bankr. D. Mass. 2006)).

The Debtor testified to using a portion of the funds to pay for a memorial in honor of Joshua, burial plots for himself and his wife, a vehicle for Papaleo, and clothing for Haley. Using the funds for those purposes likely constituted embezzlement. First, without a trust document

13

describing the proper uses of the funds, appropriating the funds in these ways would be inconsistent with Haley's rights to the funds, particularly without Haley's or Haley's mother's knowledge. Second, using the funds to purchase items for the Debtor's own purposes could support that the Debtor knew he had no authorization or right to use the funds in these ways. *See Ansin*, 667 B.R. at 768; *Manevska*, 587 B.R. at 534.

Ultimately, however, the Court need not decide whether the funds used for these purchases (or the amount thereof) should be excepted from discharge on account of embezzlement under § 523(a)(4) because, as explained below, Haley is entitled to all of the funds that were allocated to the Haley Marie Cloutier Trust, and that debt is excepted from the Debtor's discharge on account of the Debtor's defalcation while acting in a fiduciary capacity.

### 4.    Defalcation While Acting in a Fiduciary Capacity

Section 523(a)(4) excepts from discharge any debt for "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Accordingly, "[t]he threshold issue is whether the debtor was acting in a fiduciary capacity." *Fautz*, 636 B.R. at 570. While a breach of fiduciary duty may occur under state law, "the fiduciary relationship necessary for a denial of discharge under § 523(a)(4) is determined by federal law." *Raso v. Fahey (In re Fahey)*, 482 B.R. 678, 688 (B.A.P. 1st Cir. 2012) (citing *Petrucelli v. D'Abrosca (In re D'Abrosca)*, 2011 WL 4592338, at *5 (B.A.P. 1st Cir. Aug. 10, 2011)).

> The term applies only to relationships arising out of express or technical trusts, and not to trusts that are implied in law as a remedy. As a result, the existence of [a] fiduciar[y] dut[y] alone does not establish fiduciary capacity for purposes of § 523(a)(4), although most courts today recognize that the technical or express trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.

*Fautz*, 636 B.R. at 570 (alterations in original) (quoting *Romano*, 353 B.R. at 761).

"The elements of an express trust have traditionally included an explicit declaration of

14

trust, a clearly defined trust res, and an intent to create a trust relationship." *Id.* (quoting *Levitsky v. McPherson (In re McPherson)*, 564 B.R. 6, 18 (Bankr. D. Mass. 2017)). The parties do not dispute that, despite the representation on the Accounting that the funds were deposited into a trust, the Debtor failed to create the Trust. Accordingly, no express trust existed.

Technical trusts, on the other hand, "arise from a statute or common law," *id.* (citing *McPherson*, 564 B.R. at 18), but "do not include 'a trust which the law implies from a contract or a trust imposed as a remedy for wrongdoing,'" *id.* (quoting *MacPherson v. Marano (In re Marano)*, 568 B.R. 723, 730 (Bankr. D. Mass. 2017)). Rather, "[a] technical trust has all the attributes of an express trust, except, in lieu of an explicit declaration of intent, its origin is found in the fiduciary relationship of the parties and the surrounding circumstances." *Anderson v. Ingeneri (In re Ingeneri)*, 321 B.R. 601, 605 (Bankr. D. Me. 2005). "When there is a fiduciary duty to subordinate self-interest with respect to property for the benefit of another, a technical trust will exist." *Id.* (citations omitted).

State law is relevant to determine whether a technical trust exists. *D'Abrosca*, 2011 WL 4592338, at *5 (citations omitted); *Fautz*, 636 B.R. at 570 (noting that a technical trust "is construed narrowly but can be informed by principles of state law" (citing *Romano*, 353 B.R. at 763)). "A state law fiduciary relationship may not rise to the level of 11 U.S.C. § 523(a)(4) unless 'state law imposes the duties of a trustee on a party.'" *D'Abrosca*, 2011 WL 4592338, at *5 (quoting *McDowell v. Stein*, 415 B.R. 584, 595 (S.D. Fla. 2009)) (citation omitted); *see also Cloninger v. Cloninger (In re Cloninger)*, 548 B.R. 839, 856 (Bankr. N.D. Ga. 2016) (quoting *McDowell*, 415 B.R. at 594) (citation omitted).

Here, a technical trust exists under Massachusetts state law by virtue of the Debtor's status as administrator of the Estate. "'Personal representative' is Massachusetts' term for an

15

administrator or executor [of an estate]." *Kupperstein v. Schall (In re Kupperstein)*, 943 F.3d 12, 16 n.1 (1st Cir. 2019) (quoting Mass. Gen. Laws ch. 190B, § 1-201).  Under Massachusetts law, "[a] personal representative is a fiduciary who shall observe the standards of care applicable to trustees as described in [Mass. Gen. Laws ch.] 203C."  Mass. Gen. Laws ch. 190B, § 3-703(a); *see also* Mass. Gen. Laws ch. 203C, §§ 2(a), 3(a) (trustees owe fiduciary duties to beneficiaries and must prudently invest and manage trust assets); *MacDonald v. JP Morgan Chase Bank, N.A.*, 242 N.E.3d 1146 (Table), 2024 WL 4260267, at *2 (Mass. App. Ct. 2024) (explaining that because personal representatives must act as fiduciaries, "they are required to act prudently and reasonably to preserve the estate's value for the beneficiaries" (citing *Taylor v. Jones*, 136 N.E. 382, 384 (Mass. 1922))).  Further, an improper exercise of power concerning the estate will cause a "personal representative [to be] liable to interested persons for damage or loss resulting from the breach of fiduciary duty to the same extent as a trustee of an express trust."  Mass. Gen. Laws ch. 190B, § 3-712; *see also* Mass. Gen. Laws ch. 190B, § 3-808(b) ("A personal representative is individually liable only if he or she is personally at fault for (1) obligations arising from ownership or control of the estate or (2) for torts committed in the course of administration of the estate.").

In *In re Cloninger*, the Bankruptcy Court for the Northern District of Georgia noted that, under Florida law, a personal representative is a fiduciary required to observe the standards of care applicable to trustees, 548 B.R. at 856 (quoting Fla. Stat. Ann. § 733.602(1)), and that a personal representative's fiduciary duty is the same as a trustee of an express trust, liable for damages resulting from the breach of such duty, *id.* (quoting Fla. Stat. Ann. § 733.609(1)).  The court thus concluded that a fiduciary relationship under §523(a)(4) existed between the Debtor, as personal representative of the estate, and the plaintiff, a beneficiary of the decedent's estate.  *Id.*

The same is true under Massachusetts law.  A personal representative is a fiduciary held to

16

the same standard of care as trustees, Mass. Gen. Laws ch. 190B, § 3-703(a), and is liable for damages resulting from a breach of fiduciary duty to the same extent as a trustee of an express trust, Mass. Gen. Laws ch. 190B, § 3-712.   The Court therefore concludes that the Debtor, as personal representative of the Estate, was a fiduciary for purposes of § 523(a)(4). *See Cloninger*, 548 B.R. at 856.   Accordingly, the Debtor is held to the same standard of care as a trustee and had a fiduciary duty as personal representative to act in the best interests of the Estate and its only beneficiary, Haley.

"The meaning of defalcation has at its core the misappropriation of money held in a fiduciary capacity and the failure to account for any such monies." *Fautz*, 636 B.R. at 571 (citations omitted); *see Pa. Lawyers Fund for Client Security v. McKee (In re McKee)*, 648 B.R. 147, 169 (Bankr. E.D. Pa. 2023) (explaining that defalcation occurs "when a fiduciary misappropriates or fails to account for money or other property held in trust for another" (citation omitted)).   "In addition, 'defalcation requires some degree of fault, closer to fraud, without the necessity of meeting a strict specific intent requirement . . . something close to a showing of extreme recklessness." *Fautz*, 636 B.R. at 571 (quoting *Rutanen v. Baylis (In re Baylis)*, 313 F.3d 9, 18, 20 (1st Cir. 2002)).   "Reckless conduct demonstrating that the fiduciary disregarded or [was] 'willfully blind to a substantial risk of his conduct will turn out to violate a fiduciary duty' has led to a finding of defalcation." *Id.* (quoting *Akerman*, 587 B.R. at 786); *see also Bullock*, 569 U.S. at 273–74.

In *Bullock*, the Supreme Court held that "defalcation" under § 523(a)(4) involves "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." 569 U.S. at 269.   The court explained that "[w]here actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is

17

willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* at 274 (quoting Model Penal Code § 2.02(2)(c) (A.L.I. 1985)). "Such a risk is evaluated in light of the nature and purpose of the [d]efendant's conduct and circumstances known to him." *H. Brooks & Co., LLC v. Yerges (In re Yerges)*, 512 B.R. 916, 922 (Bankr. W.D. Wis. 2014) (citations omitted).

The Debtor was only permitted to use the funds to create the Trust in accordance with the Accounting and to prudently invest those funds as required under applicable state law. *No other use of the funds was permissible.* The Debtor breached his fiduciary duty and misappropriated the Settlement funds with "gross recklessness in respect to[] the improper nature" of his fiduciary behavior as personal representative of the Estate. *Bullock*, 569 U.S. at 269. He did so not only in initially failing to create the Trust despite representations in the Accounting that the Trust had been (or would be) created, but did so again when he used the funds for impermissible purposes and retained the funds in a safe at his home. This conduct, exacerbated by the failure to disclose to Haley the existence of the funds at any time before 2022, demonstrates the Debtor's conscious disregard or willful blindness to the substantial and unjustifiable risk that his conduct would violate his fiduciary duty as personal representative of the Estate. *See Bullock*, 569 U.S. at 269.

In sum, the Court finds and rules that (1) the Debtor had a fiduciary duty to Haley with respect to the Settlement funds through his role as administrator of the Estate; (2) the Debtor is liable to Haley under Massachusetts law for the breach of his fiduciary duty in failing to establish the Trust and prudently invest the funds; (3) the Debtor's breach of his fiduciary duty constituted "defalcation" while acting in a fiduciary capacity within the meaning of § 523(a)(4); and (4) the debt owed to Haley is excepted from the Debtor's discharge. Therefore, judgment will enter in favor of Haley on Count I of the Complaint.

**D.     Damages**

Having concluded that the debt is excepted from the Debtor's discharge, the Court must next determine the amount of that debt. Haley requests that this Court's award of damages include lost earnings in addition to the principal amount of the funds that the Debtor was obligated to place in the Trust. Haley argues that the total debt owed is $56,981.08, based on the expected growth of the Settlement funds had they been appropriately invested, less the $13,000 already paid by the Debtor to Haley. The burden to establish entitlement to those damages lies with Haley. *See Woodward Sch. for Girls, Inc. v. City of Quincy*, 13 N.E.3d 579, 589 (Mass. 2014) (under state law, "[t]he plaintiff bears the burden 'to introduce evidence proving its damages to a reasonable certainty'" (quoting *Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc.*, 864 N.E.2d 518, 541 (Mass. App. Ct. 2007))).

Of the $22,286.51 that should have been deposited into the Trust for Haley's benefit, $13,000 has already been paid to Haley by the Debtor. The Debtor argues that this Court should deduct the entire amount of the remaining balance, $9,286.51, based on the Debtor's testimony that he spent the balance of the funds on purchases that furthered the Trust's purported purpose — to benefit Haley. That theory, however, fails under the circumstances of this case, because the Debtor *never created the Trust.*

Under the Massachusetts Uniform Trust Code, once a trust is created, and "[u]pon acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries and in accordance with [Mass. Gen. Laws ch. 203E]." Mass. Gen. Laws ch. 203E, § 801. "A trustee shall administer the trust as a prudent person would, considering the purposes, terms and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill and caution." Mass. Gen.

19

Laws ch. 203E, § 804; *see also* Mass. Gen. Laws ch. 203C, § 3(a). "[T]he trustee may incur only costs that are appropriate and reasonable in relation to the trust property, the purposes of the trust and the skills of the trustee." Mass. Gen. Laws ch. 203E, § 805.

If the Trust had been created, the Debtor's argument that the funds were used in accordance with the purposes of the Trust may have been considered. But because the Trust was never established, there were neither trust terms nor a trust purpose. While the Debtor may have subjectively believed that he was furthering the purpose of the (nonexistent) Trust when making purchases that were purportedly for Haley's benefit, his failure at the outset to create the Trust leaves him liable as personal representative of the Estate for the full principal amount, with no deductions. *See* Mass. Gen. Laws ch. 190B, §§ 3-712, 3-808(b). The Debtor's argument that he was unaware of his duties related to the Trust because no trust document existed is unavailing. The failure to appropriately create the Trust, which presumably would have established the uses to which the funds would be put, cannot now be used as a shield against the Debtor's liability or to reduce the amount of the debt owed to Haley. Accordingly, the Court finds and rules that the Debtor is liable to Haley for the remaining principal amount of the Settlement funds totaling $9,286.51.

With regard to the claim for any lost earnings had the funds been appropriately placed in Trust, Haley fairs less well. It is true that, under state law, a personal representative is liable for damages resulting from a breach of fiduciary duty to the same extent as a trustee of an express trust. Mass. Gen. Laws ch. 190B, § 3-712. Therefore, as administrator of the Estate, the Debtor's failure to create the Trust makes him liable for all damages resulting therefrom as if he were the trustee of an express trust. And "[w]hen a breach of trust occurs, the beneficiary of the trust is entitled to be put in the position he would have been in if no breach of fiduciary duty had been

20

committed." *Woodward*, 13 N.E.3d at 599 (alteration in original) (quoting *Berish v. Bornstein*, 770 N.E.2d 961, 977 (Mass. 2002)); *see also* Restatement (Third) of Trusts, § 100 (a) ("A trustee who commits a breach of trust is chargeable with (a) the amount required to restore the values of the trust estate and trust distributions to what they would have been if the portion of the trust affected by the breach had been properly administered . . . ."). Additionally, "where the breach [of fiduciary duty] impacted growth of the trust's assets, making the beneficiary whole 'may require awarding interest beginning from the time of the breach, such that the trust's assets resemble what they would have but for the breach.'" *Electrical Workers Pension Plan, Local 103, IBEW, v. Herold*, Civil Action No. 18-cv-11037-ADB, 2019 WL 4192149, at *4 (D. Mass. Sept. 4, 2019) (quoting *Woodward*, 13 N.E.3d at 599).

Generally speaking, then, Haley would be entitled to be put in the same position she would have been in had the Debtor actually created the Trust and appropriately invested the funds. However, "[w]hile the calculation of lost profits [does] not require mathematical precision, it [can] not be remote, speculative or hypothetical." *Brewster*, 864 N.E.2d at 541 (citing *Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 771 (1st Cir. 1996)) (further citations omitted). Here, Haley has failed to introduce sufficient evidence to support the calculation of lost earnings on which she asks the Court to rely. Haley relies on an unsworn letter that was provided by an accountant opining on three different methods of calculating the estimated value of the funds as of January 31, 2023 had the funds been invested on April 17, 2003.

As an initial matter, the dates listed in the letter as to the calculation of lost earnings are unreasonable and implausible. The accountant's calculation of lost earnings begins on April 17, 2003, the date of Joshua's death. While there are no facts in evidence as to the precise date of the Settlement or the date that the Debtor received the funds, neither could have occurred on April 17,

2003. The Estate was not opened until July 16, 2003, and the Debtor was not appointed as administrator of the Estate until August 15, 2003. Based on the dates of the Accounting, it is most likely that the Settlement occurred (and the funds presumably received) at some point between August 15, 2003 and April 17, 2004, the end date listed on the Accounting. Thus, the calculation of any lost earnings should not begin on April 17, 2003. It is also unclear as to why January 31, 2023 is used as the end date for the accountant's analysis.

Further, Haley failed to attach or otherwise provide any actual calculations to support the figures listed in the accountant's letter. Nor did Haley provide any reliable evidence to support the calculations, such as an affidavit signed by the accountant or the accountant's testimony at trial. *Cf. Herold*, 2019 WL 4192149, at *4–5 (determining judgment damages to include principal amount, lost investment income, and attorney's fees, based on credited affidavit from ERISA plan administrator). In the absence of any reliable supporting evidence, the Court cannot credit Haley's calculations, and the Court finds the claimed amount to be too remote, speculative, or hypothetical. *See Brewster*, 864 N.E.2d at 541. Accordingly, Haley has failed to meet her burden to establish lost earnings in the amount set forth by Haley in reliance on the accountant's letter.

However, the Court finds that Haley is entitled to prejudgment interest. "Because the underlying cause of action is based on Massachusetts law, [prejudgment] interest accrues at the rate specified in Massachusetts law." *Cruikshank v. Casey (In re Bos. Grand Prix, LLC)*, 624 B.R. 1, 21 (Bankr. D. Mass. 2020) (citing *Lassman v. Keefe (In re Keefe)*, 401 B.R. 520, 527 (B.A.P. 1st Cir. 2009)). Massachusetts statutory law, specifically Massachusetts General Laws ch. 231, § 6B, "provides for the addition of interest to the amount of damages awarded in an action involving damage to property or other such tort actions, at a rate of twelve per cent per year from the date of commencement of the action." *Woodward*, 13 N.E.3d at 599. "The primary goal of this statutory

22

interest award is not to make the aggrieved party whole, but, rather, 'to compensate for the delay in the plaintiff's obtaining his money.'" *Id.* (quoting *Bernier v. Boston Edison Co.*, 403 N.E.2d 391, 401 (Mass. 1980)). Massachusetts General Laws ch. 231, § 6B applies to breach of fiduciary duty actions. *See Berkowitz v. Berkowitz*, 817 F.3d 809, 814–15 (1st Cir. 2016). Accordingly, Haley is entitled to interest on the amount of $9,286.51 at the rate of 12% per year from the date the Complaint was filed, December 2, 2024, through the entry of judgment.

IV.    <u>CONCLUSION</u>

For all the foregoing reasons, the Court finds that (1) the Debtor is liable to Haley for breach of fiduciary duty; (2) the debt is excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(4); and (3) the amount of the debt incurred as a result of the Debtor's defalcation while acting in a fiduciary capacity (and the amount of the debt excepted from the Debtor's discharge) is $9,286.51 plus interest in the amount of 12% per year from December 2, 2024 through the date of the judgment. Therefore, judgment will enter in favor of Haley on Count I of the Complaint. Judgment on Counts II and III of the Complaint will enter in favor of the Debtor. A judgment in conformity with this memorandum will issue forthwith.

DATED: April 14, 2026

By the Court,

Elizabeth D. Katz
United States Bankruptcy Judge

23